UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ZOILA ACOSTA                          :
                                      :
        v.                            :        C.A. No. 06-461S
                                      :
MICHAEL J. ASTRUE,                    :
Commissioner of Social Security       :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

benefits ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her

Complaint on October 19, 2006 seeking to reverse the decision of the Commissioner.  On June 29,

2007, Plaintiff filed a Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing

the Commissioner's Final Decision.  (Document No. 13).  On July 27, 2007, the Commissioner filed

a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 14).  Plaintiff

filed a Reply on August 2, 2007.  (Document No. 15).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the administrative

record and the legal memoranda filed by the parties, I find that there is substantial evidence in the

record supporting the Commissioner's non-disability determination and that Plaintiff has not shown

grounds for a sentence six remand, i.e., that "there is new evidence which is material and that there

is good cause for the failure to incorporate such evidence into the record in a prior proceeding...."

42 U.S.C. § 405(g). Consequently, I recommend that Plaintiff's Motion to Reverse (Document No. 13) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on July 24, 2003, alleging disability as of July 1, 2000. (Tr. 56-59). The application was denied initially on November 6, 2003 (Tr. 21-23) and upon reconsideration on December 16, 2004. (Tr. 25-27). Plaintiff requested an administrative hearing on January 16, 2005. (Tr. 28). On May 10, 2006, Administrative Law Judge Gerald Resnick ("ALJ") held a hearing at which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") appeared and testified. (Tr. 328-345). The ALJ issued a decision on June 16, 2006 finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 8-18). The Appeals Council denied Plaintiff's request for review on September 12, 2006, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff primarily argues that new, non-cumulative medical evidence mandates a remand to the Commissioner for further administrative proceedings. Plaintiff attributes error to the fact that the ALJ – while properly focusing on Plaintiff's mood and anxiety disorders – failed to consider the degree to which Plaintiff's cognitive functioning is impaired. Plaintiff contends that the newly submitted psychiatric evidence is material and probative on the issue of Plaintiff's cognitive deficiencies and that, if considered by the ALJ on remand, would ultimately lead him to conclude that Plaintiff meets the Commissioner's listing for mental retardation and is, therefore, presumed

disabled within the meaning of the Act without further inquiry.  <u>See</u> Document No. 13 at pp. 7-8. Plaintiff also argues that the ALJ failed to properly evaluate the medical evidence.

The Commissioner disputes Plaintiff's claim and argues that there is not good cause to expand the record.  In addition, the Commissioner contends that there is substantial evidence of record supporting the ALJ's non-disability finding.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Ortiz v. Sec'y of Health and Human Servs.,</u> 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); <u>Rodriguez v. Sec'y of Health and Human Servs.,</u> 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  <u>Rodriguez Pagan v. Sec'y of Health and Human Servs.,</u> 819 F.2d 1, 3 (1st Cir. 1987); <u>Barnes v. Sullivan,</u> 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Frustaglia v. Sec'y of Health and Human Servs.,</u> 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen,</u> 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  <u>Nguyen v. Chater,</u> 172 F.3d  31, 35 (1st Cir. 1999) (per curiam);

accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the

Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits.  <u>Deblois v. Sec'y of Health and</u>

<u>Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied

despite her disability.  <u>Id.</u>

     **E.    Other Work**

     Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts

to the Commissioner to establish that the claimant could perform other work that exists in the

national economy.  <u>Seavey</u>, 276 F.3d at 5.  In determining whether the Commissioner has met this

burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be

met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  <u>Seavey</u>, 276

F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from

an exertional impairment, without significant non-exertional factors.  <u>Id.</u>; <u>see also</u> <u>Heckler v.</u>

<u>Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is

appropriate in cases involving only exertional impairments, impairments which place limits on an

individual's ability to meet job strength requirements).

     Exclusive reliance is not appropriate when a claimant is unable to perform a full range of

work at a given residual functional level or when a claimant has a non-exertional impairment that

significantly limits basic work skills.  <u>Nguyen</u>, 172 F.3d at 36.  In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert.  <u>Heggarty</u>, 947 F.2d

at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

    (6)    The claimant's daily activities.

-10-

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was forty-eight years old on the date of the ALJ's decision.  (Tr. 11, 19).  Plaintiff testified that she has a third-grade education and that she worked as a housekeeper and babysitter.  (Tr. 65, 332, 334).  Plaintiff alleges that she is unable to work due to depression and anxiety.  (Tr. 64, 334-335, 339).  Plaintiff lives alone, but her adult daughter is usually with her.  (Tr. 332).  Plaintiff washes dishes, sweeps, does laundry with her daughter, attends church four to six times per

month, visits with her daughter and grandchildren in Connecticut twice each month and attends appointments at the Providence Center every other week. (Tr. 337-339). Plaintiff prefers to be alone, but she gets along well with others. (Tr. 335-336). She has memory problems and difficulty concentrating. Id.

Plaintiff underwent a consultative psychiatric examination by Dr. Nina B. Nizetic, on August 27, 2003, at the request of Disability Determination Services. (Tr. 143-145). Plaintiff arrived to the appointment alone via taxi, explaining that she typically relies on her cousin or public transportation for rides. (Tr. 143). Plaintiff informed Dr. Nizetic that she suffers from depression, insomnia, crying spells and loneliness and that she lacks interest in daily activities. Id. She stated that her depression comes and goes, but it had been worse over the last year. Id. Plaintiff relayed that she quit school in the third grade and that she was raped at age thirteen by a family friend which resulted in the birth of her now thirty-five year old daughter. (Tr. 143, 275). She informed Dr. Nizetic that she had two daughters and one son. Id.

On mental status examination, Plaintiff demonstrated adequate rapport with Dr. Nizetic, she was friendly, and her responses were appropriate to the thought content, though her mood was sad and tearful. (Tr. 144). Plaintiff was in contact with reality, she demonstrated a cooperative attitude and her speech was spontaneous. Id. She was oriented to time, place and person; her memory for recent and distant events was fair; she offered concrete interpretations of common proverbs; and she gave concrete answers to similarities and differences. Id. Dr. Nizetic noted that Plaintiff evidenced diminished concentration, and her general information was poor, but she had insight into her condition and her judgment was not impaired. Id. There was no evidence of hallucinations, delusions, phobias or obsessive-compulsive thoughts, though she reported feelings of worthlessness.

Id.  Dr. Nizetic diagnosed rule out major depressive disorder and assigned a General Assessment of Functioning ("GAF") score of 60.  Id.  Dr. Nizetic opined that Plaintiff had moderate restriction of her daily activities, diminished concentration and decreased psychomotor activity; but her social functioning was not impaired, and she was capable of managing funds.  (Tr. 143-144).

The record reflects that Plaintiff sought treatment at The Providence Center for depression and Post Traumatic Stress Disorder beginning in 2003.  (Tr. 249-250, 269-271, 275).  Plaintiff was seen by a case manager and a registered nurse approximately twice per month and was examined by her treating psychiatrists, Dr. Andrea Mernan or Dr. Ricardo Restrepo, on December 24, 2003, April 8, 2004, October 18, 2004, March 14, 2005, October 19, 2005 and February 2, 2006.  (Tr. 213-214, 233-234, 247, 256, 266, 275-277).

On December 9, 2003, Plaintiff indicated that she was taking her medications as prescribed, and she was slightly depressed because of family issues but she felt "much better" than when she first presented for treatment.  (Tr. 269).  Plaintiff was well-groomed, cooperative and her speech was clear and coherent.  Id.  She was alert and oriented in three spheres, she answered questions appropriately and she appeared less depressed.  (Tr. 267, 269).  She denied suicidal ideation.  (Tr. 269).  When she was examined by Dr. Mernan on December 24, 2003, Plaintiff denied suicidal ideation as well as auditory hallucinations, and Dr. Mernan remarked that Plaintiff appeared resourceful and well supported emotionally by her sister.  (Tr. 266).  Dr. Mernan diagnosed major depressive disorder and Post Traumatic Stress Disorder and instructed Plaintiff to continue taking her anti-depressant medications, Zoloft and Trazodone.  (Tr. 266, 272).

Notations from case managers at The Providence Center indicate that they were assisting Plaintiff with obtaining new housing in late 2003 and early 2004 because Plaintiff's new roommate

had substance abuse problems and Plaintiff was seeking to retain custody of her niece and nephew. (Tr. 259-262, 264-265, 268-270).  Despite these issues, Plaintiff was routinely described as calm, pleasant, cooperative, alert and oriented in all spheres, slightly less depressed than usual, stable and more optimistic.  (Tr. 252, 255, 258, 260, 263-264, 268).  Case managers noted that Plaintiff traveled to Florida during this time for a vacation.  (Tr. 258, 261, 263).

Upon examination of Plaintiff on April 8, 2004, Dr. Mernan noted that Plaintiff was stable overall, and she was not currently suicidal or hearing voices.  (Tr. 256).  Plaintiff was noted to be polite, and she demonstrated normal motor activity and appropriate insight.  Id.  Dr. Mernan diagnosed Post Traumatic Stress Disorder and instructed Plaintiff to continue with Zoloft and Trazodone.  Id.

Plaintiff was examined by Dr. Restrepo on October 18, 2004.  (Tr. 247).  Plaintiff informed Dr. Restrepo that she had been living in Connecticut with her family for the previous four months and that she was feeling better for her return to Rhode Island.  Id.  Plaintiff stated that she was feeling calm, less depressed, less anxious and she was eating well.  Id.  She indicated that she was living in a new apartment and that she was happy about her independence.  Id.  Plaintiff added that she was walking outside and attending church.  Id.

On mental status examination, Dr. Restrepo noted that Plaintiff was alert and oriented in all spheres and she was cooperative, pleasant and demonstrated good eye contact.  (Tr. 247).  Plaintiff's mood was "better" and her affect was appropriate.  Id.  Dr. Restrepo remarked that Plaintiff denied suicidal ideation, hallucinations and delusions.  Id.  He added that Plaintiff's thought process was coherent, and her judgment was fair.  Id.  Dr. Restrepo diagnosed major depressive disorder,

recurrent, severe, and Post Traumatic Stress Disorder.   Id.   He advised Plaintiff to continue her treatment with Zoloft and Trazodone.   Id.

After Plaintiff's return to The Providence Center in October 2004, Plaintiff began to meet with a Registered Nurse, Vilma Guevara, every two weeks to pack her medications.   (Tr. 240). When Plaintiff presented on February 23, 2005, she explained that she was returning from a trip to Miami and the Dominican Republic. (Tr. 237).   Plaintiff was observed to be calm, pleasant and showing good eye contact.   Id.   She was communicating and smiling appropriately, and she denied suicidal ideation and hallucinations.   Id.

Plaintiff was examined by Dr. Mernan on March 14, 2005.   (Tr. 233-234).   Plaintiff reported that she was feeling "regular," but that she is always depressed. (Tr. 233).   She complained of being by herself and reported experiencing problems with sleeping.   Id.   On mental status examination, Dr. Mernan noted that Plaintiff was polite and cooperative with no abnormal motor movements.   (Tr. 234).   Plaintiff spoke at a normal rate, rhythm and tone, and her thought process was linear.   Id. Although her affect appeared depressed, Plaintiff stated that her mood was "regular."   Id.   Dr. Mernan remarked that Plaintiff demonstrated appropriate intellect, insight and judgment.   Id.   Dr. Mernan memorialized Plaintiff's statements that she socializes with her neighbors, plays bingo, walks and watches television and that she planned to learn some English.   Id.   Dr. Mernan diagnosed Post Traumatic Stress Disorder; major depressive disorder, recurrent, severe, with psychotic features in remission; and dysthymia.   Id.   Plaintiff was instructed to continue with her current medications. Id.

On May 16, 2005, Plaintiff reviewed her treatment plan with Ms. Guevara.   (Tr. 225).   Ms. Guevara's notes reflect that Plaintiff was informed of the importance and benefits of working, but

Plaintiff stated that she would keep looking for a job when she returned from the Dominican Republic in June.  Id.  Plaintiff was referred to occupational services.  Id.  The following month, Plaintiff appeared pleasant and calm and stated that she was happy to be going on vacation to the Dominican Republic.  (Tr. 222).

Plaintiff next presented to The Providence Center over three months later on October 3, 2005, at which time she stated that she was feeling sad because her nephew tried to commit suicide the previous day.  (Tr. 218).  Despite her report of sadness, it was observed that Plaintiff was calm, polite and pleasant with good eye contact.  Id.  She denied suicidal ideation, hallucinations and feelings of paranoia.  Id.  At her visit on October 19, 2005, it was noted that Plaintiff was psychiatrically stable, she participated in her appointments and she took her medication as prescribed.  (Tr. 216).  Plaintiff was invited to continue looking for work, but she refused, stating that she did "not wish to work at this moment."  Id.

When Plaintiff was examined by Dr. Mernan the following day, she described episodes of panic, but was vague about how long these episodes last.  (Tr. 213).  She asked Dr. Mernan for a letter advocating that she be placed in a larger apartment on a lower floor because she felt shut in.  Id.  Dr. Mernan noted that Plaintiff's condition remained unchanged and instructed her to continue with Zoloft and Trazodone.  Id.

Dr. Mernan performed a mental status examination on Plaintiff on February 2, 2006.  (Tr. 275-277).  Dr. Mernan noted that Plaintiff appeared "as she always does which is appropriately groomed and smiling.  She is polite and cooperative."  (Tr. 276).  Dr. Mernan remarked that Plaintiff had no abnormal motor movements, her thought process was linear, and she suffered no perceptual abnormalities.  Id.  Plaintiff's mood was described as marginally depressed, but Dr. Mernan wrote

that her affect did not confirm this.  Id.  Dr. Mernan observed that Plaintiff had appropriate intellect, insight and judgment.  Id.  She reiterated Plaintiff's reports that she socializes with her neighbors, plays bingo, walks and watches television and added that overall, Plaintiff was "fairly satisfied with her current life."  Id.

At her visit with Ms. Guevara the following week, Plaintiff was polite and pleasant and reported feeling happy because she was watching what she ate and lost weight.  (Tr. 279).  Plaintiff informed that she would be traveling to Virginia the following month to meet with several family numbers to celebrate her niece's birthday.  Id.  Plaintiff denied suicidal ideation, hallucinations and paranoid ideations.  Id.

A home visit was made by Ms. Guevara to Plaintiff's apartment on March 13, 2006.  (Tr. 280).  Ms. Guevara observed that Plaintiff was pleasant and polite and her home was clean and organized.  Id.  Plaintiff reported that she was anxious but happy because she was leaving for the Dominican Republic the next day.  Id.  Plaintiff added that she was going to take advantage of this trip "to rest and travel."  Id.  Plaintiff denied suicidal ideation, hallucinations and paranoia.  Id.

Plaintiff was scheduled to see Ms. Guevara on April 18, 2006, and April 27, 2006, but Plaintiff missed these appointments because she was in New York caring for her sick mother.  (Tr. 282, 304).  At her next appointment on May 12, 2006, Plaintiff was polite, pleasant and maintained good eye contact.  (Tr. 306).  Plaintiff informed Ms. Guevara that she felt happy and that she had a "wonderful time" in the Dominican Republic.  Id.  She stated that she was depressed when she returned because her mother became sick, but she felt better because her mother's condition had improved.  Id.  Plaintiff denied suicidal ideation, hallucinations and paranoia.  Id.

Dr. Mernan completed a mental residual functional capacity questionnaire on May 18, 2006. (Tr. 284-285).  Dr. Mernan opined that Plaintiff was moderately limited in her abilities to respond appropriately to coworkers, perform simple tasks and perform repetitive tasks.  Id.  Dr. Mernan suggested that Plaintiff had moderately severe limitations in her abilities to understand, carry out and remember instructions; maintain attention and concentration in a work setting; respond appropriately to supervision; respond to customary work pressures; perform complex tasks; and perform varied tasks.  Id.

On referral from her attorney, Plaintiff underwent a consultative psychiatric evaluation by Dr. A.H. Parmentier on May 26, 2006.  (Tr. 308-313).  Dr. Parmentier noted that, as part of the evaluation, he reviewed Plaintiff's treatment record from Dr. Mernan.  (Tr. 309).  Plaintiff reported continued depressive symptoms and auditory hallucinations to Dr. Parmentier.  Id.  She relayed that her appetite was poor and she did not eat meals regularly.  Id.  Plaintiff stated that she often did not leave her house because she feels panicked outside of her apartment.  (Tr. 309, 311).  She informed that she attends church on occasion and that she reads the Bible regularly, though she stated that she had difficulty concentrating.  Id.

On mental status examination, Plaintiff was cooperative, though tearful, and her speech was staggered.  (Tr. 310).  Dr. Parmentier noted that Plaintiff's thoughts were logical, coherent and goal-directed and there was no looseness of association, flight of ideas, delusions or significant paranoia. Id.  Plaintiff reported "chronic" suicidal ideation, explaining that she has thoughts of jumping out of her window.  (Tr. 310-311).  On cognitive testing, Plaintiff gave her date of birth, the day, the name of her attorney, the month and the year.  (Tr. 311).  She registered three items, recalling two of the three; she could perform simple addition; and she could identify objects.  Id.

-18-

Dr. Parmentier diagnosed major depressive disorder, recurrent, severe with psychotic features; panic disorder with agoraphobia; Post Traumatic Stress Disorder, chronic; and rule out schizoaffective disorder.  (Tr. 312).  Dr. Parmentier opined that Plaintiff had moderately severe limitations in her abilities to understand, carry out and remember instructions; maintain attention and concentration in a work setting; respond appropriately to supervision; perform complex tasks; perform repetitive tasks; and, perform varied tasks.  (Tr. 314-315).  He suggested that Plaintiff was moderately limited in her abilities to respond appropriately to coworkers and perform simple tasks, but she was severely limited in her ability to respond to customary work pressures.  Id.

The ALJ decided this case adverse to Plaintiff at Step 4 of the sequential evaluation process. At Steps 2 and 3, the ALJ found that Plaintiff had a major depressive disorder and post traumatic stress disorder, impairments that were deemed "severe" within the meanings of the Regulations but were not "severe" enough to meet or medically equal, either singly or in combination, a listed impairment.  (Tr. 12, 17 at Findings 2-3).  The ALJ found that Plaintiff retained the RFC to: have a fair memory; understand routine 3-step and novel 2-step instructions; have superficial interaction on the job; recognize and avoid work hazards; make work decisions regarding objects and routine work procedures; and perform simple, routine, repetitive tasks on a sustained basis over a normal 8-hour workday, in a stable work environment, with no more than simple decision-making and no complex or detailed tasks.  (Tr. 17,  18 at Finding 5).  At Step 4, the ALJ found that Plaintiff could perform her past relevant work, as well as other light production assembly-type work as an assembler, packager or inspector, and a machine operator or attender.  (Tr. 17, 18 at Finding 6). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  (Tr. 17, 18 at Finding 8).

Plaintiff asserts that a psychological examination recently performed by Dr. Maria Garrido, a licensed clinical psychologist, on May 14, 2007 compels a sentence six remand for additional proceedings.  Plaintiff contends that this battery of testing is material in that it reveals that Plaintiff suffers from cognitive dysfunction, and that her level of functioning is so poor that it meets the Commissioner's listing for mental retardation – a listing which the ALJ failed to consider. (Document No. 13 at p. 13).  Furthermore, Plaintiff argues that there is "good cause" for admitting this evidence, as Dr. Garrido's testing did not take place until well after the ALJ rendered his decision.  Id.

### A.      Sentence Six Remand

### 1.      The psychological evaluation performed by Dr. Garrido is not "new and material" evidence.

In order to obtain a sentence six remand, Plaintiff is required to establish that "there is *new* evidence which is *material*...."  42 U.S.C. § 405(g) (emphasis added).  In order for the evidence submitted by Plaintiff to be deemed "new" within the meaning of the Act, the evidence must not have been contained within the administrative record at the time the ALJ rendered his decision.  See Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 139 (1st Cir. 1987).  See also Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding.").  In Evangelista, the First Circuit ruled that an examination performed after the Appeals Council denial was not "new" and "material" within the meaning of the Act.  Evangelista, 826 F.2d at 139-140.  The Evangelista Court focused primarily on the fact that the plaintiff was attempting to admit an opinion from a "retained physician" regarding conditions which were already mentioned elsewhere in the ALJ's "voluminous, detailed, and complex" medical record.  Id. at 140.  Rather than "offer[ing]...new facts of any

relevance," the Court of Appeals concluded that the physician's affidavit and report merely "arrange[d] the factual particles contained in the record in a somewhat different pattern." Id. Here, the recent psychological evaluation submitted by Plaintiff is also "derivative" of other evidence already contained in the record, and Plaintiff has not shown why such evaluation was not "available" to her at the time of the ALJ hearing.

In assessing Plaintiff's sentence six remand request, it is necessary to step back and look at the big picture. Plaintiff prefers a narrower view. Plaintiff criticizes the ALJ's decision because it "exclusively considered questions related to [her] mood and anxiety disorders," and did not consider her "cognitive dysfunction." (Document No. 13 at p. 7). She then argues that Dr. Garrido's report reveals that she suffers from a significant cognitive deficit which meets Listing 12.05 (mental retardation). Plaintiff's argument, however, leaves out important parts of the picture.

First, Plaintiff never previously claimed disability due to a cognitive impairment. Rather, Plaintiff, who was represented by counsel during the administrative process, alleged disability due to depression, auditory hallucinations and anxiety. (Tr. 64, 94, 104, 334). See Conte v. McMahon, 472 F. Supp. 2d 39, 45 (D. Mass. 2007) (Claimant "had legal representation, which places less of a burden on the [ALJ] independently to develop the record."). Plaintiff never raised the issue of a cognitive impairment during the administrative proceedings nor did she allege any cognitive limitations approaching those necessary to meet Listing 12.05 (mental retardation).

Second, prior to Dr. Garrido's recent opinion, Plaintiff was never diagnosed with a cognitive impairment by her treating psychiatrist or by any other medical source. For example, on March 16, 2005 and February 3, 2006, Dr. Mernan, a treating psychiatrist, rated Plaintiff's "intellect, insight and judgment" as "appropriate." (Tr. 234, 276).

Finally, Dr. Garrido was the second consultative mental health professional engaged by Plaintiff's counsel.  The first, Dr. Parmentier, a Board certified psychiatrist, evaluated Plaintiff on May 26, 2006 – shortly before the ALJ issued his decision. (Tr. 308-313).  Dr. Parmentier reviewed Plaintiff's treatment records from the Providence Center and performed a mental status examination of Plaintiff.  (Tr. 309-311).  Dr. Parmentier performed some cognitive testing of Plaintiff and did not diagnosis any cognitive impairment or mental retardation, and did not suggest the need for any further cognitive testing.  (Tr. 312, 316, 320).  Dr. Parmentier diagnosed affective and anxiety-related disorders (Tr. 312, 316) which was consistent with Plaintiff's claim of "disability as a result of emotional problems."  (Tr. 334).

The issue of a disabling cognitive impairment and Listing 12.05 (mental retardation) did not appear on the horizon until after the ALJ's decision became final in September 2006 and this action was commenced.  Plaintiff was referred to Dr. Garrido by her attorney and was evaluated on May 14, 2007.  (Document No. 13, Ex. A).  Like Dr. Parmentier, Dr. Garrido interviewed Plaintiff, reviewed her treatment records and performed a mental status examination.  Unlike Dr. Parmentier, Dr. Garrido did more extensive testing of Plaintiff's cognitive functioning although she conceded in her report that  "some of the test administrations were abbreviated due to the time constraints of the interview."  Id. at p. 9.[1]  Plaintiff performed poorly on this testing according to Dr. Garrido, and Dr. Garrido diagnosed "cognitive functioning estimated at deficient level."  Id. at p. 10.  There is no indication in the record why Dr. Parmentier did not administer similar tests to Plaintiff in 2006, otherwise diagnose deficient cognitive functioning or even suggest the possibility of a disabling cognitive impairment.

---

[1] In her report, Dr. Garrido does not identify the specific tests which were "abbreviated" due to time constraints or indicate why such abbreviated tests would still be accurate.

In Evangelista, the First Circuit expressed concern about unsuccessful claimants using sentence six remands to change strategy and seek a second bite at the apple.  In particular, the First Circuit noted that "[i]f a losing party could vault the 'newness' hurdle of § 405(g) merely by retaining an expert to reappraise the evidence and come up with a conclusion different from that reached by the [ALJ], then the criterion would be robbed of all meaning."  Evangelista, 826 F.2d at 140.  It further recognized that "[a] wide variety of evidence would be 'new' in a sophisticated, enterprising world where there are often almost as many opinions as there are experts."  Id.

For the reasons discussed above, I do not find that Plaintiff has vaulted the "newness" hurdle and thus do not recommend a sentence six remand.  Plaintiff was represented by counsel before the ALJ and neither her counsel nor her pre-decision expert identified, or even hinted at, a cognitive impairment reaching the level of Listing 12.05 (mental retardation).  In addition, there is no pre-decision medical evidence supporting such a diagnosis.  Based on the record before me, the only reasonable conclusion to reach is that Plaintiff is shifting her theory of disability in view of the ALJ's adverse decision.  The ALJ properly evaluated the case based on the evidence and arguments before him, and cannot be faulted for failing to independently identify and analyze the issue of cognitive functioning.  I offer no opinion as to whether or not Plaintiff could have established disability on this basis.  However, the record does not support a sentence six remand.  Perhaps Plaintiff's proper course of action is to submit a new application claiming disability due to cognitive impairment.  Cf. Brown v. Chater, 932 F. Supp. 71, 75 (S.D. N.Y. 1996).

**2.      "Good cause" does not exist for the late submission of Dr. Garrido's psychological evaluation.**

Even if this Court were to find that Plaintiff's tender comprised new, material evidence, Plaintiff must still articulate "good cause" adequate to justify her failure to present the results of Dr.

-23-

Garrido's psychological evaluation to the ALJ in order to secure a sentence six remand.  "Sentence six and its 'good cause' limitation come into play only 'when the district court learns of evidence not in existence or available to the applicant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'"  Seavey v. Barnhart, 276 F.3d 13 (1st Cir. 2001) (quoting Sullivan v. Finkelstein, 496 U.S. 626 (1990)).

In the instant matter, Plaintiff has not established "good cause" for her failure to obtain and present Dr. Garrido's psychological evaluation during the ALJ's initial hearing.  Although Plaintiff was not evaluated by Dr. Garrido until May 2007, almost a year after the ALJ rendered his decision, Plaintiff's counsel has neither explained why Plaintiff was not referred to Dr. Garrido prior to the ALJ's decision nor why Dr. Parmentier did not identify a significant cognitive impairment.  In Evangelista, the First Circuit concluded that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of Social Security appeals."  826 F.2d at 141 (citing Brown v. Schweiker, 557 F. Supp. 190, 193 (M.D. Fla. 1983)).  In this case, Plaintiff's request for remand due to the discovery of a new potential disability after the final conclusion of administrative proceedings and during the pendency of this appeal smacks of an attempt to play "yo-yo" with this case.  Plaintiff has not established that the circumstances of this case constitute good cause for remand under 42 U.S.C. § 405(g).

### B.      The ALJ Properly Evaluated the Medical Evidence

In addition to seeking a sentence six remand, Plaintiff contends that reversal and remand is warranted because the ALJ failed to properly evaluate the medical evidence.  In particular, Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of her treating

psychiatrist, Dr. Mernan and erred by giving only minimal weight to the opinion of her consultative psychiatrist, Dr. Parmentier.  For the reasons discussed below, Plaintiff has shown no reversible error in the ALJ's assessment of the medical evidence.  The ALJ's RFC assessment is supported by substantial evidence of record, and thus is entitled to deference.

The ALJ determined that Plaintiff suffered from major depressive disorder and post traumatic stress disorder but not of Listing-level severity.  (Tr. 17, Findings 2 and 3).  The ALJ discounted Dr. Mernan's assessment of moderately severe limitations in Plaintiff's ability to understand, carry out and remember instructions, maintain attention and concentration, respond appropriately to supervision and respond to customary work pressures.  (Tr. 16).  The ALJ also gave "minimal weight" to Dr. Parmentier's opinion of total disability.  The ALJ weighed all of the medical evidence and Plaintiff's credibility and concluded that Plaintiff retained the RFC to "perform simple, routine, competitive, repetitive tasks on a sustained basis over a normal eight-hour workday, in a stable work environment, with no more than simple decision making and no complex or detailed tasks."  (Tr. 18, Finding 5).  Based on this RFC and the VE's testimony, the ALJ concluded that Plaintiff could perform her past work as a housekeeper and could also perform other light production assembly-type work.  (Tr. 17, 18 at Finding 6).

As noted above, Plaintiff argues first that the ALJ violated the treating physician rule by failing to give controlling weight to the opinion of her treating psychiatrist (Dr. Mernan).  In his decision, the ALJ provides a detailed explanation of the respective weights accorded to the various medical opinions offered regarding Plaintiff.  (Tr. 14-17).  Although Plaintiff disagrees with the ALJ's ultimate conclusions, she has not shown any error in the ALJ's evaluation of medical

evidence.  See Rivera-Torres v. Sec'y of Health and Human Servs., 837 F.2d 4, 5 (1st Cir. 1988) (the

resolution of evidentiary conflicts is within the province of the ALJ).

Plaintiff alleges that in determining her RFC, the ALJ failed to give appropriate weight to

the opinion of Dr. Mernan, a treating psychiatrist.  A treating physician is generally able to provide

a detailed longitudinal picture of a patient's medical impairments, and an opinion from such a source

is entitled to considerable weight if it is well supported by clinical findings and not inconsistent with

other substantial evidence in the record.  See 20 C.F.R. § 404.1527(d).  The amount of weight to

which such an opinion is entitled depends in part on the length of the treating relationship and the

frequency of the examinations.  See 20 C.F.R. § 404.1527(d)(1).  If a treating source's opinion is

not given controlling weight, the opinion must be evaluated using the enumerated factors and "good

reasons" provided by the ALJ for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

The ALJ provided adequate reasons for his refusal to fully credit Dr. Mernan's opinion and,

since such reasons are supported by the record, they are entitled to deference.  "[An ALJ] may reject

a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in

the record, even if that evidence consists of reports from non-treating doctors."  Castro v. Barnhart,

198 F. Supp. 2d 47, 54 (D. Mass. 2002) (citing Shaw v. Sec'y of Health and Human Servs., 25 F.3d

1037 (1st Cir. 1994)).  That is exactly what the ALJ did in this case, and there is no error.

It appears from the record that Plaintiff has been treating with Dr. Mernan "since at least

March of 2005."  (Tr. 233-234; Document No. 13 at p. 13).  Dr. Mernan completed annual

evaluations of Plaintiff on March 14, 2005 (Tr. 233-234) and on February 2, 2006 (Tr. 275-277).

In the 2006 evaluation, Dr. Mernan described Plaintiff's mental status as follows:

> [Plaintiff] appears as she always does which is appropriately groomed
> and smiling.  She is polite and cooperative.  She has no abnormal

> motor movements.  She speaks Spanish with some limited English.
> Her thought process is linear.  Her thought content is without her
> medical condition.   She suffers no perceptual abnormalities.
> Although her mood is marginally depressed, her affect does not
> confirm this.  She has appropriate intellect, insight, and judgment.

(Tr. 276).  Dr. Mernan reported that Plaintiff lives "on her own," "socializes with her neighbors,

walks, and watches TV."  Id.  She also noted that Plaintiff "has not been working recently and I have

no reason to believe that she will go back to work.  Overall, she is fairly satisfied with her current

life."  Id.  Dr. Mernan assessed a GAF of 50.  Id.  After the February 2006 evaluation, the record

reflects that Plaintiff traveled to Virginia to celebrate a niece's birthday (Tr. 279), to the Dominican

Republic (Tr. 280) and to New York to care for her sick mother.  (Tr. 282).

Plaintiff returned to Rhode Island and was present for her ALJ hearing on May 10, 2006.

(Tr. 328).  At the end of the hearing, Plaintiff's counsel indicated that he had not been in contact

with Plaintiff until the preceding Friday and requested that the record be held open to, in part, "find[

] out what Dr. Mernan thinks [Plaintiff] can and can't do."  (Tr. 344).  After the hearing, Dr. Mernan

completed a mental RFC questionnaire which rated Plaintiff's limitations as "moderately severe"

in several areas.  (Tr. 284).  There is no record that Dr. Mernan saw Plaintiff in connection with her

May 18, 2006 RFC assessment.   The record indicates that Plaintiff missed her May 4, 2006

appointment with Dr. Mernan (Tr. 305) and was seen by Nurse Guevara on May 12, 2006 who

assessed Plaintiff's condition as stable and reported that she was:

> Polite, pleasant, good 1:1 eye contact, well groomed.  Reported
> feeling happy because her children had given her gifts for mother's
> day (in advance).  Reports that she had a "wonderful time" while in
> DR but when she returned her mother became sick and reports that
> she started feeling very depressed "but now she is doing better so I
> feel good".  Denies VH, AH, SI, HI, paranoia.

(Tr. 306).

In his decision, the ALJ accurately notes that the medical records did not "reflect significant abnormalities for April 2006 and May 2006." (Tr. 15).  He also accurately noted the inconsistency between Dr. Mernan's GAF ratings and the "remainder of the GAFs which were 55 and 60." (Tr. 16).  In her May 2006 RFC opinion, Dr. Mernan noted moderately severe limitations in several areas of mental functioning, but the ALJ accurately noted that these findings were "inconsistent with treatment notes which never mention any problems relating to others, any problems with attention, comprehension and concentration and reflect encouragement for [Plaintiff] to work." (Tr. 16).  These reasons are supported by the record and constitute "good reasons" for failing to give controlling weight to Dr. Mernan's opinion of total disability.  See 20 C.F.R. § 404.1527(d).

Similarly, the ALJ outlined his reasons for giving "minimal weight" to Dr. Parmentier's opinion of total disability. (Tr. 15).  Since those reasons are also supported by the record, the ALJ's evidentiary assessment is entitled to deference.  Plaintiff was evaluated by Dr. Parmentier after the ALJ hearing, and it is undisputed that Dr. Parmentier is a non-treating source.  Under the circumstances, it was not unreasonable for the ALJ to comment on the source of Plaintiff's referral to Dr. Parmentier and the ALJ's perception of a pattern as to Dr. Parmentier's conclusions.  See Coggon v. Barnhart, 354 F. Supp. 2d 40, 53 (D. Mass. 2005).  The ALJ did not, however, rely exclusively on that fact in discounting the weight afforded to Dr. Parmentier's opinion.  The ALJ also accurately pointed out (Tr. 15) the inconsistency between Dr. Parmentier's reports of continuing "severe depressive symptoms, auditory hallucinations, command hallucinations to end her life and panic" (Tr. 309) and the medical evidence of record.  In particular, Dr. Mernan's February 2006 report indicated that Plaintiff denied suicidal thoughts, her panic had improved and she suffers no "perceptual abnormalities." (Tr. 275-276).  Also, the ALJ relied upon Nurse

Guevara's report on May 12, 2006  that Plaintiff's condition was stable, she reported having a "wonderful time" in the Dominican Republic and she denied visual and auditory hallucinations, suicidal and homicidal ideation and paranoia.  (Tr. 306).  The ALJ properly relied upon these inconsistencies in evaluating Dr. Parmentier's opinion.  Plaintiff has shown no error.

## VI.     CONCLUSION

For the reasons articulated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion to Reverse (Document No. 13) be DENIED.  I further recommend that the District Court enter final judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 29, 2007